UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MAJOR SEAN BARNETT,** | : | Case No. 3:25-cv-00070 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| Defendant. | : | |

**THE UNITED STATES OF AMERICA'S COMBINED REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

The United States of America submits a combined (i) Reply in Support of its Motion to Dismiss and (ii) Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint.

Respectfully submitted,

KELLY A. NORRIS
Acting United States Attorney

*s/Linda Mindrutiu*
LINDA MINDRUTIU (0082341)
Assistant United States Attorney
Attorney for Defendant
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6972
E-mail: linda.mindrutiu@usdoj.gov

## MEMORANDUM IN SUPPORT

Plaintiff does not adequately oppose the United States's Motion to Dismiss his Amended Complaint. Plaintiff simply argues his Amended Complaint is not actually against the United States but against Dr. Eric Barnes. By its plain terms, it is not. Despite arguing that the Amended Complaint brings valid *Bivens* claims against Dr. Barnes, Plaintiff simultaneously seeks to amend his complaint for the second time. No *Bivens* claims exist on Plaintiff's allegations, either as pled in the Amended Complaint or the proposed Second Amended Complaint. And Plaintiff is precluded from bringing such claims under the Supreme Court's *Bivens* jurisprudence. Thus, amending his complaint for the second time to allege *Bivens* claims against Dr. Barnes would be futile. For these reasons, his Motion for Leave to File Second Amended Complaint should be denied and this action should be dismissed.[1]

### I. THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THE COURT LACKS JURISDICTION OVER THE UNITED STATES.

Plaintiff's Amended Complaint names the United States as a defendant and fails to identify a valid waiver of sovereign immunity. Plaintiff's opposition does not identify a waiver either—it focuses entirely on arguing that the Amended Complaint actually brings *Bivens* claims against Dr. Barnes. Although *pro se* pleadings are "held to a less stringent standard" than pleadings by lawyers, *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991), "the lenient treatment generally

---

[1] Defendant intends to respond to Plaintiff's Motion to Seal more fully in a separate filing shortly.

accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Payne v. Sec'y of Treasury*, 73 F. App'x. 836, 837 (6th Cir. 2003) (holding that district courts are not required to create a *pro se* litigant's claim for him or her).

Here, the First Amended Complaint lists the United States as the defendant. Am. Compl., Doc. No. 10, Caption and ¶ 2. Even as *pro se*, Plaintiff is required to demonstrate the jurisdiction of this Court. *Bivens* is not a waiver of sovereign immunity because *Bivens* claims—in the very limited contexts in which they exist—are by definition against individuals and not the federal government. *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994). The First Amended Complaint, which names the United States as the defendant, should therefore be dismissed as a matter of law for lack of jurisdiction.

II. **THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED AND THE MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT SHOULD BE DENIED BECAUSE NO COGNIZABLE *BIVENS* REMEDY EXISTS**

Plaintiff spends much of his Opposition to the Motion to Dismiss arguing that he brings viable *Bivens* claims against Dr. Barnes. He argues the First Amended Complaint should be read to allege *Bivens* claims against Dr. Barnes. His proposed Second Amended Complaint explicitly names Dr. Barnes as the sole defendant and alleges various *Bivens* claims. Because Plaintiff's arguments in both filings rest on

3

the existence and viability of *Bivens* claims arising out of the same alleged conduct, Defendant submits this combined response to Plaintiff's Opposition and the Motion for Leave to File Second Amended Complaint.

Plaintiff's attempt to bring *Bivens* claims arising out of Dr. Barnes' alleged conduct should be rejected under Supreme Court jurisprudence. The Supreme Court has repeatedly stated that *Bivens* claims are disfavored, time and again rejecting any invitation to extend *Bivens* to any new context or where special factors counsel any hesitation in creating the claim. Further, Plaintiff's claims appear to arise out of or are incident to his military service, a category of claims for which the Supreme Court has explicitly rejected a *Bivens* remedy.

Thus, even if the First Amended Complaint were read to allege *Bivens* claims against Dr. Barnes (and not the United States), it should be dismissed. And the Motion for Leave to File Second Amended Complaint to allege *Bivens* claims against Dr. Barnes should be denied because any amendment would be futile. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." A motion to amend a complaint should be denied "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Kircher v. City of Ypsilanti*, 809 Fed. Appx. 284, 297 (6th Cir. 2020). A proposed amendment to a complaint is futile "'when the proposed amendment would not permit the complaint to survive a motion to dismiss.'" *Id., citing Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

And a motion to dismiss should be granted if the party "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Within this backdrop, a proposed amended complaint seeking to add a defendant to assert *Bivens* claims which are not cognizable should be denied as futile. See, e.g., *Pierce v. Mattis*, 256 F. Supp. 3d 7, 15 (D.D.C. 2017) (denying plaintiff's motion to amend to add *Bivens* claim because amendment would be futile).

### A. The Supreme Court has counseled against creating new *Bivens* remedies

In *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, the Supreme Court created a judicial remedy against federal agents who violated the plaintiff's constitutional rights, 403 U.S. 388, 397 (1971). In total, the Supreme Court has only recognized a *Bivens* claim in three limited contexts more than four decades ago. *Id.* (unlawful search and seizure in violation of the Fourth Amendment); *Davis v. Passman*, 442 U.S. 228, 234 (1979) (violation of Fifth Amendment's Due Process clause through gender discrimination in the termination of an employee); *Carlson v. Green*, 446 U.S. 14, 24 (1980) (failure to provide adequate care to a federal prisoner in violation of the Eighth Amendment).

The three cases "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). In the four decades since the last extension of *Bivens*, the Supreme Court has repeatedly declined to create a damages claim in a variety of contexts. And "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556

5

U.S. 662, 675 (2009)). As the Court emphasized more recently, it is "[n]ow long past 'the heady days in which [it] assumed common-law powers to create causes of action." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (citation omitted). The Court has also noted that "[w]hen asked to imply a *Bivens* action, 'our watchword is caution.'" *Id*. (citing *Hernandez v. Mesa*, 589 U. S. 93, 101 (2020)).

To determine whether a cause of action can proceed under *Bivens*, the Court must engage in a two-step inquiry. *Egbert*, 596 U.S. at 492. First, the Court must determine whether the case falls within one of the three recognized causes of action or whether it presents a claim that arises in a "new *Bivens* context." *Id*. Second, if a claim arises in a new *Bivens* context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id., quoting Ziglar*, 582 U.S. at 136. Finally, "a Court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive Branch to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493, citing *Ziglar*, 582 U.S. at 137.

Here, Plaintiff's purported *Bivens* claims in the First Amended Complaint and proposed Second Amended Complaint present a new context and special factors counsel against recognizing new *Bivens* claims. For all these reasons, the First Amended Complaint must be dismissed and the Motion for Leave to File Second Amended Complaint should be denied as futile.

## B. The facts alleged by Plaintiff present a new context

The Supreme Court has instructed that the test to determine whether a case presents a new *Bivens* context is whether "the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 582 U.S. at 139–140. Differences that are meaningful enough to constitute a new context include: "the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id*. This bar to extending *Bivens* is easily satisfied. *Id.* at 149 ("Given this Court's expressed caution about extending the *Bivens* remedy . . . the new-context inquiry is easily satisfied.").

In the present case, Plaintiff's constitutional claims against Dr. Barnes are meaningfully different than the three identified in the Supreme Court's *Bivens* cases and are an attempt to expand *Bivens* to a "new context." Plaintiff alleges in his First Amended Complaint that Dr. Barnes made numerous false statements to government agencies. Am. Compl., Doc. No. 10, ¶ 12. He alleges in his proposed Second Amended Complaint that Dr. Barnes "initiated and contributed to multiple unlawful investigations and deprivations of rights which included Dr. Barnes providing false statements to military officials, initiation of a baseless 'no contact order,' and the deliberate suppression of Plaintiff's research projects and patient

7

treatment plans" and "failed to protect patient safety and obstructed reports and concerns about provider transitions." Proposed Second Am. Compl., Doc. No. 16-1, ¶¶ 8, 10.  He claims these actions deprived him of property interests in medical research and his medical license (purported Fourth Amendment claim), forced him to participate in inquiries and administrative actions without legal representation (purported Fifth Amendment claim), and were deliberately indifferent to Plaintiff's ADHD, PTSD, and professional integrity (purported Eighth Amendment claim). *Id.* at ¶¶ 22, 24, 26–27.  This factual context is meaningfully different from the three recognized *Bivens* contexts, which involved law enforcement search and seizure of a home, gender discrimination against a congressional staffer, and inadequate medical care to a federal prisoner.

Most of Plaintiff's claims also involve different constitutional rights at issue from the existing *Bivens* contexts, which involved the Fourth Amendment right to be free from unreasonable search and seizure (*Bivens*, 403 U.S. at 397), the Fifth Amendment's equal protection component of the Due Process clause based on gender discrimination (*Davis*, 442 U.S. at 234) and the Eighth Amendment right to be free from cruel and unusual punishment (*Carlson,* 446 U.S. at 24). Plaintiff's First Amended Complaint alleges violations of his Fifth Amendment due process rights, rights to legal counsel, and right to be free from government retaliation and compelled self-incrimination. Am. Compl., Doc. No. 10, ¶ 13. In his proposed Second Amended Complaint, Plaintiff alleges a First Amendment retaliation claim, Fourth Amended unlawful seizure of property claim, Fifth Amendment due process claim,

8

and Eighth Amendment claim for cruel and unusual punishment and denial of medical care. Proposed Second Am. Compl., Doc. No. 16-1, ¶¶ 18–27. Plaintiff cannot provide any support whatsoever for extending *Bivens* to these new contexts. And even if any of the claims were to involve the same constitutional provisions as the three prior cases, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 102.

Further, the Supreme Court has explicitly held that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 498–99. The Supreme Court has also declined to create a damages remedy for due process claims. *United States v. Stanley*, 483 U. S. 669, 683– 684 (1987) (substantive due process suit against military members); *Schweiker v. Chilicky*, 487 U. S. 412, 428–29 (1988) (procedural due process suit against Social Security officials). Thus, Plaintiff's purported *Bivens* claims constitute a new context.

### C. Special factors counsel against creating a new *Bivens* claim

Continuing to the second step of the *Bivens* analysis, Plaintiff's claims fail to survive a special factors analysis. Special factors include "whether existing legislation covers the area and alternative processes exist for protecting the right" and "separation-of-powers principles including the risk of interfering with the authority of the other branches and whether the judiciary can competently weigh the costs and benefits at stake." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524, citing *Hernandez*, 589 U.S. at 102.

9

*Egbert* makes clear that Congress, and not the courts, is the proper branch of government to determine what remedies, if any, are appropriate for a constitutional violation. *Egbert,* 596 U.S. at 491–92. Like the new context criterion, this one is easily satisfied to bar a *Bivens* claim: If there is even a single reason to pause before applying *Bivens* to a new context, then the Court should reject the request to extend *Bivens. Id.* at 492 (quoting *Hernandez,* 589 U. S. at 102). The Supreme Court emphasized the deference that courts should extend to the legislature: "[t]he *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 496 (emphasis in original) (citing *Ziglar*, 582 U.S. at 136). Courts should not focus on the "narrow level of generality" present in each case, but rather to determine if judicially-created damages remedies may be "harmful' or inappropriate." *Id.* (citations and internal quotation marks omitted). "Unsurprisingly, Congress is far more competent than the Judiciary" at assessing policy decisions and their implications across the government. *Id*. at 491 (citation and internal quotation marks omitted). "Even in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." *Id.* at 493 (quoting *Ziglar*, 582 U.S. at 136). Therefore, the impact of extending the remedy in any manner presents uncertainty, and "uncertainty alone is a special factor that forecloses relief." *Id*. The Supreme Court

10

emphasized that "in most every case" the special factor analysis should result in finding "no *Bivens* action" available. *Id.* at 492 (citation omitted).

In *Egbert,* the Supreme Court reasoned that Congress is in a better position to decide whether to provide a damages action for First Amendment retaliation in part because "federal employees faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties." *Id.* at 499 (citations and quotations omitted) (quoting *Bush v. Lucas,* 462 U.S. 367, 389 (1983)). And "the Judiciary is ill equipped to alter that framework generally, and especially so when it comes to First Amendment claims." *Id.* at 500.

The Supreme Court has further held that in the context of military life, special factors counsel against creating a *Bivens* remedy. Plaintiff is an active-duty United States Air Force physician stationed at Wright-Patterson Air Force Base. Proposed Second Am. Compl., Doc. No. 16-1, ¶4. He alleges Dr. Barnes initiated or contributed to investigations of Plaintiff and impacted patient care. *Id.* at ¶ 8, 10. Plaintiff's *Bivens* claims arise out of these investigations and patient care occurring while Plaintiff served as an active-duty member of the military. The Supreme Court has acknowledged that Congress has plenary authority over the military, and it has exercised that authority to establish statutes regulating military life and providing a comprehensive internal system of justice. That system provides for the review and remedy of complaints and grievances of uniformed members of the armed forces. *Chappell* v. *Wallace,* 462 U. S. 296, 301–303 (1983). Since Congress, in the

11

exercise of its plenary authority over military life, did not provide for a *Bivens*-type remedy for uniformed members of the armed forces, it would be inappropriate for the judicial branch of government to create such a remedy for them. *Id.* at 304. Thus, the Supreme Court has "declined to extend *Bivens* where doing so would interfere with the system of military discipline created by statute and regulation." *Hernandez*, 589 U.S. at 108 (citing to *Chappell*, 462 U. S. 296, and *Stanley*, 483 U. S. 669). As the Court acknowledged: "The special status of the military has required, the Constitution has contemplated, Congress has created, and this court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel." *Chappell*, 462 U.S. at 303–04.

      Civilian courts are ill-equipped "to second-guess military decisions" regarding "basic choices about the discipline, supervision, and control" of service members, and doing so could impair "military discipline and effectiveness." *United States v. Shearer*, 473 U.S. 52, 57–58 (1985). Thus, as the Fourth Circuit has observed: "whenever the Supreme Court has considered a *Bivens* case involving the military, it has concluded that 'the insistence . . . with which the Constitution confers authority over the Army, Navy, and militia upon the political branches . . . counsels hesitation in our creation of damages remedies in this field.'" *Lebron v. Rumsfeld*, 670 F.3d 540, 550 (4th Cir. 2012) (quoting *Stanley*, 483 U.S. at 682) (alterations in original)). Special factors thereby counsel against creating a new *Bivens* remedy here.

**D. No *Bivens* remedy exists because Plaintiff's alleged injuries arise out of or are in the course of activity incident to service.**

The Supreme Court has unequivocally held that "no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'" *Stanley*, 483 U.S. at 684 (quoting *Feres v. United States,* 340 U.S. 135, 146 (1950)). This applies even if the defendant is a civilian. *Id*. at 680–81 (holding that "officer-subordinate" relationship is not crucial; rather, the test is whether the alleged acts were "incident to service."); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting the Court had previously recognized "Congress' institutional competence in crafting appropriate relief for aggrieved federal employees as a 'special factor counseling hesitation in the creation of a new remedy'" and recognizing it had reached a similar result in the military context even where defendants were alleged to have been civilian personnel).

The *Chappell* Court found that "the special nature of military life--the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel--would be undermined by a judicially created remedy exposing officers to personal liability at the hand of those they are charged to command." *Chappell*, 462 U.S. at 304. Soon after, the Court reaffirmed the reasoning of *Chappell* in holding that no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service. *Stanley*, 483 U.S. at 683–84 (citing *Feres*, 340 U.S. at 146)). This encompasses "*all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a

13

member of the military." *Major v. United States*, 835 F.2d 641, 644 (6th Cir. 1987) (emphases in original).

Although not entirely clear from his First Amended Complaint or proposed Second Amended Complaint, Plaintiff's claims appear to arise out of his status as an active-duty member of the military or were in the course of activity incident to his military service. Thus, no *Bivens* remedy exists.

### E. There are alternative remedial structures in place for Plaintiff

As an active member of the military, Plaintiff is subject to the policies and structures in place within the military. Plaintiff argues as a military member he does not have access to alternative remedial structures to address his particular claims. But the relevant question is not whether implying a *Bivens* action would disrupt the Congressional or Executive branch remedy, whether a wrong would otherwise go unredressed, or whether the "existing remedies do not provide complete relief." *Egbert*, 596 U.S. at 493; *Stanley*, 483 U.S. at 683 ("It is irrelevant to a 'special factors' analysis whether the laws currently on the books afford Stanley, or any particular serviceman, an 'adequate' federal remedy for his injuries."). In *Schweiker* v. *Chilicky,* the Supreme Court did not infer a damages action against individual government employees alleged to have violated due process in their handling of Social Security applications. 487 U.S. 412, 425 (1988). The Court went on to hold that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id*. at 421–

422. The Court therefore "rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court." *Malesko*, 534 U.S. at 69 (referring to *Schweiker*). Instead, the relevant question is whether the Court, rather than the political branches, is better equipped to decide whether existing remedies "should be augmented by the creation of a new judicial remedy." *Egbert*, 596 U.S. at 493 (quoting *Bush*, 462 U.S. at 388). Here, as the Supreme Court has ruled repeatedly concerning claims brought by military personnel, the answer to the question is no. This Court should not create new *Bivens* causes of action in this case.[2]

---

[2] If the Court were to find that a *Bivens* cause of action existed and that Plaintiff could file and serve his Second Amended Complaint naming Dr. Barnes as an individual defendant, Dr. Barnes would be entitled to seek individual-capacity representation and raise all individual-capacity defenses available to him, including qualified immunity from suit. The antecedent question of whether a Bivens claim even exists in this context should be adjudicated now to determine whether amendment in response to the United States of America's motion to dismiss is futile. *See, e.g.*, *Gordon v. Courter*, 118 F. Supp. 3d 276, 291 (D.D.C. 2015) (denying plaintiff's motion to amend seeking to add *Bivens* claims to FOIA lawsuit); *Pierce v. Mattis*, 256 F. Supp. 3d 7, 9 (D.D.C. 2017) (denying plaintiff's motion to amend to add *Bivens* claim to Title VII action); *Greene v. Buster et al.*, No. 6:20-cv-128, 2022 U.S. Dist. LEXIS 55475 (E.D. Ky Mar. 8, 2022) (denying motion to amend to add new defendant and *Bivens* claim in prisoner complaint).

15

## CONCLUSION

For these reasons, Plaintiff's First Amended Complaint should be dismissed and the Motion for Leave to File Second Amended Complaint should be denied. This action should be dismissed with prejudice.

Respectfully submitted,

KELLY A. NORRIS
Acting United States Attorney

*s/Linda Mindrutiu*
LINDA MINDRUTIU (0082341)
Assistant United States Attorney
Attorney for Defendant
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6972
E-mail: linda.mindrutiu@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on June 20, 2025, I electronically filed the foregoing using the CM/ECF system, and that on the same date I caused a copy of the foregoing to be served by Regular Mail to the Plaintiff at the following address:

Major Sean Barnett
5132 Broomsedge Drive
Beavercreek, Ohio 45431-3523

*s/Linda Mindrutiu*
LINDA MINDRUTIU
Assistant United States Attorneys